UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| HERBERT RICHTER METALL WAREN-APPARATEBAU GMBH &CO., KG, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:10-cv-00630 (TSE/IDD) |
| GIB SERVICES, LLC, et al., | ) ) ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiffs' Motion for Default Judgment against

Global Intellectual Brands, LLC ("Defendant") (Dkt. No. 32.) After a licensed attorney

for the Defendant failed to appear at the January 7, 2011 hearing, the undersigned

Magistrate Judge took this matter under advisement. Upon consideration of the

Complaint, Plaintiffs' Motion for Default Judgment, and the supporting affidavits, the

undersigned Magistrate Judge recommends that Plaintiffs' motion be GRANTED in part

and DENIED in part. Default judgment should be entered against Defendant in favor of

AlphaGrip, Inc. ("AlphaGrip") on Counts I-V of the Amended Complaint and in favor of

Herbert Richter Metall Waren-Apparatebau Gmbh ("HR Germany") on Counts VII and

VIII of the Amended Complaint. The Plaintiffs' motion should be DENIED as to Count

VI of the Amended Complaint.

# I.  INTRODUCTION

On June 6, 2011, HR Germany and AlphaGrip (collectively "Plaintiffs") brought this action against Global Intellectual Brands, LLC ("Defendant") and others.[1]  (Dkt. No. 1.)  On September 10, 2010, Plaintiffs filed an Amended Complaint against the same parties. (Dkt. No. 5).  In their Amended Complaint, Plaintiffs bring claims against the Defendant, pursuant to the Lanham Act, 15 U.S.C. §§ 1114 and 1125, for infringement on Plaintiffs' registered service marks and unfair competition.  (Am. Compl. ¶¶ 35, 41, 57.)  In addition, Plaintiffs assert claims for trademark infringement, and unfair competition under Virginia common law.  (Am. Compl. ¶¶ 46, 52.)  Plaintiffs also allege a breach of contract claim and seek avoidance and recovery of the Defendant's "actual or constructively" fraudulent transfer of assets under California law.  (Am. Compl. ¶¶ 65, 71, 78.)

## A.  Jurisdiction and Venue

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  A defendant in default admits the factual allegations in the complaint. Fed R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts alleged state a

---

[1] On December 13, 2010, Plaintiffs filed a notice of voluntary dismissal as to Defendants Randy Dunham, Michael McGhee, and GIB Services LLC. (Dkt. No. 28.)  On December 14, 2010, the Court granted the Plaintiffs' request and dismissed the aforementioned defendants. (Dkt. No. 30.)  On December 15, 2010, the Court dismissed defendant Steve Dixon from the case pursuant to Fed. R. Civ. P 4(m). (Dkt. No. 31.)

claim.") The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment.

This Court has original subject matter jurisdiction over this case pursuant to Section 39 of the Trademark Act of 1946, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because Plaintiffs' claims arise under federal patent and copyright laws. (Am. Compl. ¶ 2.) Furthermore, this Court may exercise subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. 1367 because such claims arise out of the same operative facts as Plaintiffs' federal claims.

In order for this Court to exercise personal jurisdiction over the defaulting Defendant, two requirements must be satisfied. First, Virginia's long-arm statute must authorize the exercise of jurisdiction. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Second, if that authorization exists, then the Due Process Clause of the Fourteenth Amendment requires that the defaulting defendant has sufficient minimum contacts with the forum state. *Christian Sci. Bd. Of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 205 (4th Cir. 2001). Particularly, the defendant's conduct must have such a connection with Virginia that it is fair for the defendant to be required to defend itself in a court in the Commonwealth. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-15 (1984).

In the instant case, the Court has personal jurisdiction over the Defendant pursuant to Virginia's long-arm statute, which provides that "a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in the Commonwealth." The long-arm statute is to be construed broadly to permit jurisdiction over a non-resident

"to the extent permissible under the [D]ue [P]rocess [C]lause." *Prod. Grp. Int'l v. Goldman*, 337 F.Supp.2d 788, 794 (E.D. Va. 2004).

According to the Amended Complaint, Defendant has registered trademarks with the United States Patent and Trademark Office ("PTO") and with Internet registrar VeriSign Inc., both of which are located in this jurisdiction. (Am. Compl. ¶ 2.) Furthermore, Defendant has acted in this jurisdiction to transfer said trademarks to another entity. (Am. Compl. ¶ 2.) Therefore, the Defendant has transacted business in the Commonwealth within the purview of the Virginia long-arm statue.

The Defendant's actions also satisfy the constitutional requirements imposed by the Due Process Clause because its business in Virginia constitutes sufficient minimum contacts with the Commonwealth. *See Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) (describing the "minimum contacts" analysis required by the Due Process Clause). Defendant's registration and later transfer of the trademarks located within this jurisdiction were not "random, fortuitous, or attenuated" acts. Furthermore, its transactions with Plaintiffs and with GIB Services, LLC, were directly related to its business. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997). Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because the claims arise in this district and the property at issue is located within this district. (Am. Compl. ¶ 4.) Since Plaintiffs have established that exercise of jurisdiction over this Defendant is proper under the Virginia long-arm statute and under the Fourteenth Amendment, this Court must determine whether Plaintiffs affected service of process on the Defendant such that this Court may exercise personal jurisdiction over it.

## B. Service of Process

Under Fed. R. Civ. P. 4(h), service upon a corporation, partnership or other unincorporated association shall be effectuated "in the manner prescribed for individuals by subdivision (e)(1) of that rule, or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process . . . ." Subdivision (e)(1) provides that service may be achieved "pursuant to the law of the state in which the district court is located, or where service is made . . . ." Thus, service is proper if executed according to Virginia or Delaware law. Fed. R. Civ. P. 4(h).

In Delaware, process may be served upon a domestic limited liability company by delivering personally a copy on the registered agent of the limited liability company in the state of Delaware. Del. Code Ann. 6 § 18-105. On September 23, 2010, Plaintiffs' private process server properly delivered a copy of the Summons and Amended Complaint to an officer of Defendant's registered agent, Corporation Service Company, in Wilmington, Delaware.[2] (Dkt. No. 14.) Therefore, Plaintiffs properly served Defendant pursuant to FRCP 4(h) as well as under the law of Delaware.

## C. Grounds for Entry of Default

Plaintiffs filed the Complaint on June 7, 2010 (Dkt. No. 1) and the Amended Complaint on September 10, 2010 (Dkt. No. 5.) On November 23, 2010, the Hon. T.S.

---

[2] In Plaintiffs' Memorandum in Support of its Motion for Default Judgment, Plaintiffs assert that they served Defendant pursuant to Va. Code. Ann. § 13.1-1018. (Pls.'s Mem. Supp. Mot. Default J. 11.) However, that statute applies to service of a foreign limited liability company with a registered agent within the Commonwealth as reflected by §13.01-1018(b)(stating "Whenever a domestic or foreign limited liability company fails to appoint or maintain a registered agent in the Commonwealth . . . then the clerk of the Commission shall be an agent of the limited liability company upon whom service may be made . . . .") Furthermore, Plaintiffs state in their memorandum that it served Defendant's registered agent on October 14, 2010; however, the Affidavit of Service (Dkt. No. 14) shows that the process server delivered Summons and Amended Complaint to the registered agent on September 23, 2010.

Ellis, III ordered Plaintiffs to seek and obtain default judgment as to all of the named defendants in the suit and referred the matter to the undersigned Magistrate Judge for further proceedings related to default judgment. (Dkt. No. 22.) On November 29, 2010, Plaintiffs filed a request for entry of default against the Defendant (Dkt. No. 24), and on November 30, 2010, the Clerk entered default against the Defendant. (Dkt. No. 26.) On December 23, 2010, the Plaintiffs filed this Motion for Default Judgment (Dkt. No. 32), and on January 7, 2011, the Court convened a hearing on Plaintiffs' motion. (Dkt. No. 38.) When no representative for the Defendant appeared at the hearing, the Court directed Plaintiffs' counsel to submit supplemental briefing on Plaintiffs' damages and attorney's fees. (Dkt. No. 38.) Plaintiffs' counsel filed its supplemental briefing with this Court on January 11, 2011, at which time the undersigned Magistrate Judge took this matter under advisement to issue this report and recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings,[3] the undersigned Magistrate Judge finds that the Plaintiffs have established the following facts.

HR Germany is a limited liability company organized and operating under the laws of Germany with a principal place of business in Germany. (Am. Compl. ¶ 5.) It is a well-known manufacturer of cell phone holders and accessories, which it sells under the mark IGRIP, among others. (Am. Compl. ¶ 12.) AlphaGrip is incorporated in Delaware and maintains a principal place of business in Lorton, Virginia. AlphaGrip owns IGRIP mark, U.S. Reg. No. 3,545,046, in the United States, for "communications equipment, including telephones and keypads and computer controller game pads." (Am. Compl. ¶

---

[3] The pleadings include the Amended Complaint (Dkt. No. 5), Plaintiffs' Motion for Default Judgment (Dkt. No. 32), Plaintiffs' Memorandum in Support of Default Judgment (Dkt. No. 34) and affidavits in support thereof, and Plaintiff's supplemental affidavits (Dkt. No. 39).

13; Dkt. No. 36, Exh. C.) AlphaGrip has given HR Germany an exclusive license to use the IGRIP mark in the U.S. in connection with specific cell phone holders and accessories. (Am. Compl. ¶ 14.) The Defendant is a limited liability company organized under the laws of Delaware and with a last known principal place of business in Oceanside, California. (Am. Compl. ¶ 7.)

The Defendant was formed under a different name in 2004, at which time one of the owners of HR Germany held a majority of the interest in the Defendant company. (Am. Compl. 15.) The Defendant primarily engaged in the business of selling HR Germany products in the U.S., including those manufactured and sold under the IGRIP mark. (Am. Compl. ¶ 15.) After one of the owners of HR Germany transferred his controlling interest in the Defendant company to Steven Dixon ("Dixon"), the Defendant began operating under its current name, Global Intellectual Brands, LLC. (Am. Compl. ¶ 16.)

On November 23, 2004, under instruction from HR Germany, Defendant filed in the PTO to register the mark IGRIP & Design ("IGRIP Design") for purposes of using the IGRIP Design on personal digital assistants mounts manufactured by HR Germany. (Am. Compl. ¶ 17.) AlphaGrip instituted an opposition proceeding against Defendant's registration application in the PTO. (Pls.' Mem. Supp. Mot. Default J 7.) At the time that the Plaintiffs filed the Amended Complaint, the PTO had yet to issue a registration number for the IGRIP Design. (Am. Compl. ¶ 37.)

Also, pursuant to the direction of HR Germany, Defendant filed registration applications with and received the following marks from the PTO: HR AUTO ACCESSORIES, HIPGRIP, and EARGRIP ("Other Marks"). (Am. Compl. ¶ 18.) Like

the IGRIP Design, the Other Marks were to be used on HR manufactured products. (Am. Compl. ¶ 18.) Defendant later conveyed its registration application for the IGRIP Design and its registrations for the Other Marks to GIB Services, LLC ("GIB Services"). (Am. Compl. ¶ 18; Dkt. No. 36, Exhs. E, H.)

On August 2, 2008, HR Germany and Defendant entered into an agreement ("Agreement") that provided that HR Germany would pay Defendant's litigation costs in a lawsuit in Texas in exchange for the Defendant transferring the IGRIP Design to HR Germany when Defendant ceased its business operations. (Am. Compl. ¶ 19; Harald Richter Declaration ¶ 8.) Subsequent to the signing of this Agreement, Defendant defaulted on financial obligations owed to HR Germany and to another entity, Jomark Industries, Inc. ("Jomark"). (Am. Compl. ¶ 20.) Defendant refused to pay money lawfully owed to the two companies. (Am. Compl. ¶ 20.)

On December 8, 2008, and March 13, 2009, respectively, Jomark and HR Germany filed suit against Defendant in the Superior Court for San Diego County, California ("San Diego Court") seeking judgment for amounts owed to each company. (Am. Compl. ¶ 21.) On June 4, 2009, the San Diego Court issued a writ of attachment against Defendant and in favor of Plaintiff HR Germany; and on June 10, 2009, HR Germany recorded the San Diego Court writ of attachment in the PTO against all of the registrations and pending applications filed by the Defendant for the IGRIP Design and Other Marks. (Am. Compl. ¶ 22.)

On June 11, 2009, Jomark also recorded a writ of attachment in the PTO against all of the registrations and pending applications filed by Defendant for the IGRIP Design and Other Marks. (Am. Compl. ¶ 23.) Jomark subsequently filed in the PTO a judgment

from the San Diego Court against Defendant's registrations and pending applications for the above mentioned marks. (Am. Compl. ¶ 23.) Thereafter, on November 25, 2009, HR Germany recorded in the PTO a judgment from the San Diego Court against all of Defendant's registrations and pending applications for the IGRIP Design and Other Marks. (Am. Compl. ¶ 23.) Jomark has assigned its judgment against Defendant to HR Germany. (Am. Compl. ¶ 23.)

Defendant displayed and continues to display the IGRIP Design and Other Marks on its websites at the domain names <www.igrip.net>; <www.gripbands.com>, <www.global-intellectual-brands.com>, and <www.gibcorp.net>. (Am. Compl. ¶¶ 30, 31.)

On or about July 31, 2009, Defendant ceased doing business. (Am. Compl. ¶ 24.) Around this time, Defendant transferred to GIB Services all of its intangible property. (Am. Compl. ¶¶ 24, 25.) The document facilitating the transfer of intangible property from Defendant to GIB Services defined such property to include "names, marks, patents, trademarks, service marks . . . domain names, logos, symbols, copyrights, and licenses and registrations and applications with respect thereto." (Am. Compl. ¶ 25.) Therefore, the transfer included Defendant's registration application for the IGRIP Design and the registrations for the Other Marks. (Dkt. No. 36, Exhs. E, H.) This transfer occurred without HR Germany's consent and therefore violated the August 2008 Agreement. (Am. Compl. ¶¶ 24, 25; Pls.' Mem. Supp. Default J 4.)

Furthermore, GIB Services never paid the money that it owed Defendant for the property that it obtained in this transfer. (Am. Compl. ¶ 29.) When this transaction occurred, Defendant had dispersed all of its cash and other tangible assets (Am. Compl. ¶

29.); therefore, Defendant was insolvent when it transacted with GIB Services or became insolvent as a result of the transaction. (Am. Compl. ¶ 82.) Plaintiffs allege, and by failing to answer the Defendant admits, that it transferred the IGRIP Design and Other Marks to GIB Services with the actual intent to hinder, delay, or defraud HR Germany and Jomark and to frustrate their ability to collect on their judgments. (Am. Compl. ¶ 27.) Although Defendant has ceased doing it business, upon information and belief, it is still exists as a legal entity. (Pls.' Mem. Supp. Mot. Default J. 9; Dkt. No. 36, Exh. B.)

HR Germany has entered into a settlement agreement with GIB Services whereby GIB Services has assigned to HR Germany all of its interests in the registration applications in the PTO for the IGRIP Design and Other Marks that Defendant transferred to GIB Services. (Pls.' Mem. Supp. Default Judgment 2, 9, 10.)

## III. <u>EVALUATION OF PLAINTIFF'S COMPLAINT</u>

As previously stated, a defendant in default admits the facts in the complaint by virtue of its failure to deny them. Fed. R. Civ. P. 55. Nevertheless, in issuing this Report and Recommendation, the undersigned Magistrate Judge must analyze Plaintiffs' claims in accordance with the standards under Fed R. Civ. P.12(b)(6) to ensure that the Amended Complaint contains plausible claims upon which relief may be granted. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss.)

## A.    Federal Trademark Infringement, Unfair Competition, and Dilution Claims

The Plaintiffs are seeking injunctive relief under §§ 1114 (1)(a), and 1125(a), and (d) of the Lanham Act.[4] (Am. Compl. ¶¶ 35-45, 57-64.) The Act provides that a person will be liable in a civil action, if without consent of the registrant, the person uses in commerce a reproduction or colorable imitation of a registered mark "in connection with the sale [or] offering of sale . . . or advertising of . . . services on or in connection with which . . ." such that the use is likely to cause confusion or mistake. 15 U.S.C. § 1114(1)(a). The Act further provides that a person will be liable for the use of any word or symbol or combination thereof that is "likely to cause confusion or mistake . . . as to the affiliation, connection, or association of such person with another person, or as to the . . . approval of his or her . . . services or commercial activities by another person . . . ." *Id.* § 1125(a)(1).

A plaintiff successfully brings claims for trademark infringement and unfair competition under §§ 1114(1)(a) and 1125(a) of the Lanham Act, where the plaintiff demonstrates that (1) it possesses the mark; (2) the defendant used the mark in commerce; (3) such use was "in connection with the sale, offering for sale, distribution or advertising of goods and services; and (4) that defendant's use is likely to confuse consumers. *Lamparello v. Falwell*, 420 F.3d 309, 312-13(4th Cir. 2005) *cert denied Falwell v. Lamparello*, 547 U.S. 1069 (Apr. 17, 2006). Once a plaintiff has shown that confusion is likely, such relief will be accorded by the courts. *Lamparello*, 420 F.3d at

---

[4] §1114 of the Lanham Act limits injunctive relief as a remedy to a trademark registrant in certain circumstances, none of which exists in this case. 15 U.S.C. § 1114(2). Since HR Germany is not the registrant of the IGRIP mark within the meaning of § 1127, it does not have standing to bring a claim under the Lanham Act against the Defendant.

314 (stating that a defendant would only be liable for infringement under the act where defendant's use of the mark is likely to cause confusion).

To determine whether confusion is likely, a court will consider the strength or distinctiveness of the mark, the similarity of the two marks, the similarity between the goods/services that the marks identify, the defendant's intent, and among other things, the similarity of the advertising used by the parties. *Id.* at 315 (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984).

Defendant's unauthorized use of IGRIP Design constitutes trademark infringement and unfair competition within the purview of §§ 1114(1)(a) and 1125(a) of the Lanham Act. Specifically, Plaintiff AlphaGrip validly possesses the IGRIP mark in the United States. Defendant used the IGRIP Design in, among other things, the domain names <www.igrip.net> and <www.gripbands.com>. At the time of this use, the PTO had not issued a registration number for Defendant's then pending application to register the IGRIP Design. Defendant used the IGRIP Design without AlphaGrip's authorization. Furthermore, Defendant used the IGRIP Design to advertise goods on the internet and therefore used it "in commerce" within the meaning of §§ 1114(1)(a) and 1125(a).

Also, Defendant's use of the IGRIP Design on cell phone accessories and cell phone holders is likely to cause confusion to AlphaGrip's customers because the IGRIP Mark is distinctive, the marks are almost identical, and the goods are sold in a related industry to the extent that AlphaGrip has registered the IGRIP mark for use on communication equipment, including telephones, and Defendant used the IGRIP Design to sell mounts for cell phones and personal digital assistants. Therefore, AlphaGrip has demonstrated that the Defendant has engaged in trademark infringement and unfair

competition within the meaning of §§ 1114(1)(a) and 1125(a) of the Lanham Act, and AlphaGrip is entitled to judgment on Counts I and II of the Amended Complaint.

### B. Anticybersquatting Consumer Protection Act (ACPA)

The ACPA provides that a person is liable to the owner of a mark where the person has a "bad faith intent to profit from that mark . . . and uses a domain name that . . . is distinctive at the time of registration of the domain name . . .[and is] confusingly similar to that mark. 15 U.S.C. 1125(d)(1)(A)(i) and (ii)(II). When determining whether a person has acted with bad faith intent under §1125(d) ,the Court may consider, among other things, the "person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark for commercial gain . . . ." *Id.* at (d)(1)(B) (V). The ACPA provides that a court may order the cancellation of the domain name or its transfer to the owner of the mark as a remedy to the owner in a civil action before the court. *Id.* at (C).

The Defendant's use of the websites <www.igrip.net> and <www.gripbands.com> violates the ACPA. Defendant had no rights to the IGRIP mark. In addition, the Defendant's bad faith is evidenced by the fact that it used the IGRP mark on its website even though AlphaGrip opposed Defendant's registration in the PTO for the IGRIP Design. It appears from Defendant's conduct that it intended to divert consumers away from AlphaGrip's sites for commercial gain because Defendant sold its products on multiple sites with the IGRIP mark. This diversion could harm the goodwill represented by AlphaGrip's IGRIP mark because it has no control over the activity that Defendant conducts on the aforementioned sites and it had no control over the quality of products sold on those sites. For these reasons, this Court finds that Defendant has acted

to violate the ACPA, and default judgment should be entered in favor of AlphaGrip on Count V of the Amended Complaint.

**C.      *Trademark Infringement at Virginia Common Law and the Virginia Uniform Deceptive Trade Practices Act***

Plaintiffs have also pled claims for trademark infringement and unfair competition under Virginia common law. The test for common law claims for trademark infringement under Virginia law is the same as the analysis conducted for the same claims under federal law. *Lone Star Steakhouse & Saloon Inc., v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995)(internal citations omitted). Therefore, for the reasons articulated above, the Court finds that Defendant has engaged in conduct constituting trademark infringement and unfair competition under Virginia Common law, and default judgment should be entered against Defendant and in favor of AlphaGrip on Counts III and IV of the Amended Complaint.

**D.      *Injunctive Relief***

Plaintiffs request that this Court permanently enjoin the Defendant from again infringing on the IGRIP Mark or claiming rights to the Other Marks that Defendant transferred to GIB Services.

Pursuant to § 1116, this Court may use equitable principals and its discretion to determine whether injunctive relief shall be awarded to a plaintiff to prevent violations of subsections (a) or (d) of § 1125. 15 U.S.C. § 1116. Therefore, to determine whether injunctive relief is appropriate in this case, the Court must balance the following four factors: (1) the likelihood of success on the merits of the plaintiff's claim (for a preliminary injunction), or the existence of actual success on the merits (for a permanent injunction); (2) the likelihood of irreparable injury to the Plaintiff in the absence of an

injunction; (3) the likelihood of harm to other interested persons if an injunction is issued; and (4) the public interest in granting versus not granting the injunction. *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)(stating the factors that the court must consider when making a determination about whether injunctive relief should be awarded).

Having accepted the well pled allegations of the Amended Complaint as true, AlphaGrip has demonstrated a likelihood of success on the merits because in default judgment the Court accepts all facts in the Amended Complaint as true. Furthermore, AlphaGrip has demonstrated to this Court that there is a substantial likelihood that Defendant's continued use of the IGRIP Design will harm the goodwill associated with the Plaintiff's Mark because Defendant continues to advertise products bearing IGRIP Design on its websites. The issuance of an injunction would pose no harm to any other persons and it is in the public's interest to stop the Defendant from promoting products with a mark that is confusingly similar to Plaintiff's IGRIP mark without Plaintiff's authorization. Accordingly, this Court finds that injunctive relief is appropriate and should be awarded pursuant to § 1116 to enjoin Defendant from further engaging in the conduct articulated in the Prayer for Relief of the Amended Complaint.

E.    *Attorneys' Fees and Costs*

Plaintiffs also seek an award of attorneys' fees and costs in the amount of $13, 309 for the service of the Complaint and preparation and filing of this Motion for Default Judgment. (Am. Compl. Prayer for Relief; Michael A. Grow Decl. ¶ 12, Jan. 11, 2011.) Pursuant to 15 U.S.C. §1117(a), a plaintiff is entitled to an award of full costs and reasonable attorneys' fees in exceptional cases. Courts have established that reasonable

attorneys' fees may be awarded under this provision where a plaintiff demonstrates that "defendant's conduct was malicious, fraudulent, willful or deliberate in nature." *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 550 (4th Cir. 2004)(internal citations and quotations omitted).

Based on the reasons articulated in the preceding sections, this Court finds that Defendant acted deliberately and willfully when, despite the fact that Alpha Grip objected to Defendant's application for registration of the IGRIP Design in the PTO, Defendant continued to use the Mark on its websites. Therefore, an award of attorneys' fees is appropriate in this case.

Plaintiffs submitted the Declaration of Michael A. Grow ("Grow Declaration"), Plaintiffs' attorney, and a detailed breakdown of attorneys' fees for this matter in support of its request for attorneys' fees. (Dkt. No. 39, Exh. B.) Plaintiffs' counsel avers under oath that the breakdown of fees attached to his declaration is an accurate representation of the attorneys' fees incurred for this proceeding. (Dkt. No. 39) Though the breakdown lists HR Germany as the client, in the Grow Declaration counsel avers that he represents both AlphaGrip and HR Germany. (Grow Decl. ¶ 1.) Furthermore, the breakdown of fees lists activities associated with the preparation of this motion for default judgment, the bulk of which addresses AlphaGrip's claims against Defendant for trademark infringement under federal law. Therefore, after having examined and reviewed the Grow Declaration, the undersigned Magistrate Judge finds that the requested fees are reasonable compensation for work necessarily expended to enforce AlphaGrips' rights under the Lanham Act.

### F. Breach of Contract Claim

HR Germany seeks a favorable judgment on its breach of contract claim and to recover $60,000 in damages that it paid to GIB Services to acquire the Other Marks and interest in the IGRIP Design registration application. HR Germany does not rely on a federal statute to bring their breach of contract claim, and generally such claims sound in state law. Therefore, the Court sits in diversity as to this claim and must apply the substantive law of Virginia, including its choice of law rules. *Blue Cross & Blue Shield Ass'n v. Grp. Hospitalization & Med. Servs.*, Inc., 744 F. Supp. 700, 718 (4th Cir. 1990)(stating that the Court sat in diversity and applying Virginia's conflict of laws rules on plaintiff's tort claims where plaintiff also sought relief pursuant to the Lanham Trademark Act, 15 U.S.C. § 1114).

Under Virginia choice of law rules, the "law of the place of performance governs questions arising in connection with performance of contractual duties." *Insteel Indus., Inc. v. Costanza Contracting Co., Inc.*, 276 F.Supp2d 479, 484 (4th Cir. 2003). Therefore, this Court will analyze Plaintiffs' breach of contract claim under Virginia contract law.

To be successful on a breach of contract claim, a plaintiff must show that the defendant (1) had a legally enforceable obligation, (2) materially breached that obligation, and (3) such breach caused plaintiff damage. *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). Accepting the facts of the Amended Complaint as true, HR Germany has proven that Defendant had a legally enforceable obligation. HR Germany entered into an agreement with Defendant whereby it paid for Defendant's litigation costs in a Texas lawsuit in exchange for the promise that Defendant would

transfer the IGRIP Design to HR Germany whenever Defendant ceased business operations. Defendant's transfer of the IGRIP Design to GIB Services after it ceased business operations rather than transferring the IGRIP Design to HR Germany is a material breach of its obligation under the Agreement. Accordingly, the only issue remaining is whether and to what extent Defendant's breach caused damage to HR Germany.

HR Germany cannot succeed on its breach of contract claim because it cannot prove its damages under Virginia law. A plaintiff succeeds on a breach of contract claim where he can prove that the defendant's breach actually and proximately caused the claimed damages. *See Saks Fifth Ave., Inc. v. James, Ltd.*, 272 Va. 177, 187-88, 630 S.E.2d 304, 311 (2006). Plaintiff must prove damages with reasonable certainty; contingent, speculative, and uncertain damages are not recoverable because they are uncertain. *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009).

There are two types of contract damages, direct and consequential. Direct damages flow ordinarily and expectedly from a breach of contract. *Roanoke Hospital Ass'n v. Doyle & Russell, Inc.*, 215 Va. 796, 801, 214 S.E.2d 155, 160 (1975). Consequential damages arise from unexpected, unpredictable circumstances. *Id.* Plaintiff may be compensated for consequential damages only upon a showing that the circumstances under which Plaintiff incurred such damages were within the "contemplation of both contracting parties." *Id.* Generally, contemplation must exist at the time the parties execute the contract. *Id.* at 802. Circumstances are within the contemplation of the parties if a reasonable man would have foreseen these

circumstances. *Id.* at 801 n4. Whether damages are direct or consequential is a matter of law. *Id.*

HR Germany's damages are consequential because they do not flow ordinarily and expectedly from Defendant's failure to transfer the IGRIP design to HR Germany upon cessation of business. In other words, a payment made with a third party for the transfer of the IGRIP Design is not a direct result of Defendant's breach because Plaintiff instigated a number of steps before it suffered a loss in the amount of $60,000.

HR Germany has failed to demonstrate in its Amended Complaint and Motion for Default Judgment that the parties contemplated a payment to a third party in the event that the Defendant failed to transfer the IGRIP Design to Plaintiff. HR Germany's current position is that but for Defendant's breach, HR Germany would not have sued GIB Services to recover the IGRIP Design and would not have settled with GIB Services for $60,000 for the transfer of the Mark. However, in its Amended Complaint, HR Germany contends that "unless Global [is] required to specifically perform the obligation [it] has assumed under the August 2008 Agreement . . . Global will continue said conduct to HR Germany's irreparable damage." (Am. Compl. ¶ 70.) Therefore, HR Germany initially sought specific performance as a remedy for Defendant's breach. (Am. Compl. Prayer for Relief (4)).

Furthermore, in its Memorandum in Support of its Motion for Default Judgment, HR Germany declares in a single paragraph about its damages that

> HR Germany is entitled to damages in an amount to be proven at a hearing on this matter as a remedy it [sic] for the monetary loss HR Germany suffered as a result of Global's breach . . . [t]hose damages arose largely because Global's breach forced HR Germany to . . . enter into a negotiated settlement with GIB to secure rights to intellectual property that Global should have conveyed to HR Germany . . . .

(Pls.' Mem. Supp. Default J at 18.) HR Germany makes no argument as to the value of the IGRIP Design or what it should cost to recover it in the GIB Services settlement.

Therefore, it appears to this Court that a reasonable man would not have known at the time that the parties executed the agreement that HR Germany would pay $60,000 to a third party in a settlement agreement to acquire the IGRIP Design, which Defendant transferred to the third party without HR Germany's authorization. This position is supported by the fact that HR Germany did not request in its Complaint that it be awarded the costs of payments made in a sum certain amount in any settlement agreement that it may enter into with GIB Services to acquire the IGRIP Design. If the Plaintiff did not contemplate this scenario when it filed its Amended Complaint, then this Court cannot presume that the parties contemplated these circumstances when they entered into the Agreement. As such, this Court finds that Plaintiff's breach of contract claim must fail because it has not proven damages, a necessary element to a breach of contract action under Virginia law.

Furthermore, even if this Court considered the settlement payment to be a consequential damaged caused by Defendant's breach, it would be unable able to award HR Germany the $60,000 that it seeks in damages without a full hearing on the issue because this Court can only award a plaintiff damages set forth in a declaration if those damages consist of an uncontested or liquidated amount of damages in its Amended Complaint. *Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 853 (4th Cir. 1992)(internal citations omitted).

### G. California Fraudulent Transfer Statutes

Plaintiffs also bring claims under the California Civil Code which provides that a transfer made by a debtor is fraudulent as to a creditor when made with "actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). A transfer is also fraudulent when the debtor failed to receive a "reasonably equivalent value in exchange for the transfer" and the debtor believed or reasonably should have believed that it would be unable to pay debts that it incurred when the debts came due. *Id.* at (a)(2)(B).

When a creditor avers that the debtor made the transfer with actual intent to hinder or defraud the creditor, the court will consider, among other things, whether: (1) the creditor sued the debtor or threatened to sue the debtor before the transfer was made; (2) the debtor transferred substantially all of its assets; (3) the consideration received by the debtor was reasonably equivalent to the value of the transferred asset; and (4) the debtor was or became insolvent shortly after the transfer. *Id.* §3439.04(b)(4), (5), (8), and (9); Cal. Civ. Code § 3439.05 (transfer is fraudulent if creditor's claim arose prior to transfer and the insolvent debtor made transfer without a receiving reasonably equivalent value in exchange for the transfer). A creditor bringing claims under this California statute must file suit within four years after the debtor made the transfer or within one year of when the creditor could have reasonably discovered the transfer. *Id.* at § 3439.09.

Defendant's transfer of IGRIP Design and the Other Marks to GIB Services is a fraudulent transfer within the meaning of §§ 3439.04(a)(1) and (a)(2)(B) and 3439.05. The well pled facts of the Amended Complaint are that Defendant transferred the IGRIP

Design and the Other Marks with intent to hinder, delay or defraud HR Germany.[5] Furthermore, the facts also demonstrate that HR Germany is a creditor whose claim arose against Defendant prior to the transfer. Defendant's transfer of all intangible property including IGRIP Design and the Other Marks constituted substantially all of the Defendant's assets. Defendant transferred the IGRIP Design and the Other Marks after the San Diego Court issued a writ of attachment in favor of HR Germany. Defendant did not receive any money from GIB Services for the IGRIP Design and Other Marks. And, Defendant was insolvent or became insolvent as a result of the transfer. Furthermore, HR Germany has brought its claim under this statute within four years of the transfer.

Pursuant to § 3439.07 of the California Civil Code, a creditor seeking relief under the statute may obtain "any other relief the circumstances require." Cal. Civ. Code § 3439.07(a)(3)(C). In their Memorandum in support of the Motion for Default Judgment, Plaintiffs' request that Defendant be enjoined from making any future claim to the IGRIP Design and the Other Marks transferred to GIB Services.

The Court will rely on the test set forth in the discussion of injunctive relief to determine whether it is an appropriate remedy under the fraudulent transfer claim. As previously stated, HR Germany will succeed on the merits of its claim because this Court accepts all of the facts in the Amended Complaint as true. The absence of an injunction could cause HR Germany irreparable harm because Defendant still exist as a legal entity and therefore could attempt to claim rights to the IGRIP Design and Other Marks in the future to the detriment of HR Germany. Since GIB Services has transferred the Other Marks and interest in the IGRIP Design registration application to HR Germany, and

---

[5] Neither the Amended Complaint nor Plaintiffs' Memorandum in Support of its Motion for Default Judgment set forth facts demonstrating that AlphaGrip is a "creditor as to the transfer" within the meaning of the statute.

AlphaGrip has represented that it will terminate the opposition proceeding to the Application, the Court finds that no one would be harmed by the injunction. Finally, it is in the public interest that a debtor be prevented from fraudulently transferring assets to avoid a creditor only then to claim rights to those assets in the future. Therefore, this Court recommends that Defendant be enjoined from claiming any interest or rights in the IGRIP Design registration application and the Other Marks.

## IV.  RECOMMENDATION

Plaintiffs' motion should be GRANTED in part and DENIED in part. Default judgment should be entered against Defendant in favor of AlphaGrip, Inc. ("AlphaGrip") on Counts I-V of the Amended Complaint and in favor of Herbert Richter Metall Waren-Apparatebau Gmbh ("HR Germany") on Counts VII and VIII of the Amended Complaint. The Plaintiffs' motion should be DENIED as to Count VI of the Amended Complaint. The undersigned further recommends an award of attorneys' fees in the total amount of $13,309, pursuant to 17 U.S.C. § 1117(a).

Additionally, pursuant to 15 U.S.C. § 1116, the undersigned Magistrate Judge recommends an injunction be entered providing that the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, shall be enjoined from engaging in conduct that infringes on AlphaGrip's IGRIP Mark, U.S. Reg. No. 3,545,046, or the Other Marks(U.S. Reg. No. 3,325,231 for HR AUTO ACCESSORIES; U.S. Reg. No. 3,353,703 for HIPGRIP; U.S. Reg. No. 3,341,410 for EARGRIP) acquired by HR Germany from GIB Services. Furthermore, the undersigned Magistrate Judge recommends that Defendant be enjoined from claiming any rights or interest in the IGRIP Design registration application, Application No. 76/621646.

## V.  NOTICE

By mailing copies of this report and recommendation, the parties are notified as follows.  Objections to this report and recommendation must, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, be filed within fourteen (14) days of service on you of this report and recommendation.  A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record and Defendant at the following address:

> Global Intellectual Brands, LLC
> c/o Corporation Service Company
> 2711 Centerville Road, Suite 400
> Wilmington, DE 19808

/s/ _____
Ivan D. Davis
United States Magistrate Judge

June 4, 2011
Alexandria, Virginia